IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GARY MOON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CIV-07-1248-L |
| ) | |
| CITY OF SHAWNEE, OKLAHOMA, ) | |
| DETECTIVE GRASSO, JOHN DOE, ) | |
| OFFICER IN CHARGE OF ) | |
| EVIDENCE DURING RELEVANT ) | |
| PERIODS, ) | |
| ) | |
| Defendants. ) | |

# O R D E R

On August 16, 2007, plaintiff filed an action in the District Court of Pottawatomie County, Oklahoma, alleging violations of 42 U.S.C. § 1983. In addition to the federal claims, plaintiff asserted state law claims for unlawful arrest and imprisonment, assault and battery, and intentional infliction of emotional distress. Defendants[1] removed the action to this court on November 7, 2007. This matter is before the court on defendants' motion for summary judgment. Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there

---

[1] Plaintiff named as defendants the City of Shawnee, Oklahoma, and one of its police officers, Detective Grasso. In addition, plaintiff asserted claims against another police officer under the fictitious name "John Doe". Both Detective Grasso and Officer Doe were, however, sued only in their official capacity. Petition at ¶ 3. A claim against a public employee in his official capacity is a claim against the governmental entity, in this case, the City of Shawnee. Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998). Pellegrino v. State ex rel. Cameron Univ., 63 P.3d 535, 537 (Okla. 2003).

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment.  In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party.  Board of Education v. Pico, 457 U.S. 853, 863 (1982).  Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).  In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The undisputed facts[2] establish that on August 28, 2005, Detective Alan Gunter drove to Unity North Hospital in Shawnee, Oklahoma to interview S.G., a minor who claimed to have been the victim of kidnapping and rape the night before. At the hospital, S.G. told Gunter that when she walked to a convenience store the night before, she saw a car she thought belonged to a man known to her as "Gary." S.G. became concerned when she saw the car because a man named Desmond Cooper had earlier tried to convince her to have sex with Gary for drugs or money. S.G. told Gunter that she was afraid of Gary because he had been to prison for eight years. S.G. explained that she left the store and cut through a field to get home, but that after she exited the field, the car that belonged to Gary pulled up beside her. Cooper got out of the car and chased S.G. Once he apprehended her, he threw her into the back of the car and told Gary "she was all his." S.G. informed Gunter that the man known as Gary then drove for approximately 15 minutes and took her into a house, that was later identified as being in Tecumseh, Oklahoma. When she arrived at the house, a white female named Kami and Gary took her inside. S.G. gave Gunter physical descriptions of Gary and Kami and described the house. She

---

[2]Defendant filed its motion for summary judgment on May 1, 2008. Pursuant to LCvR 7.1(g), plaintiff's response was due on May 19, 2008. Plaintiff did not file a response to defendants' motion at that time and, to date, has failed to respond. Local Rule 56.1(c) provides that "[a]ll material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." As plaintiff did not respond to defendants' motion, the court deems the Statement of Undisputed Material Facts set forth in defendants' motion to be admitted. In addition, the court has examined the evidentiary basis for the facts set forth in defendants' motion and finds the facts set forth in the court's order to be fully supported by the record.

said that once she was in the house, Gary took her to a room and raped her repeatedly over the course of two hours. She then remained locked in the room for several hours more. At some point, Kami brought S.G. some food and drink and then drove her back to Shawnee.

After the interview at the hospital, Gunter met S.G. at the Unsner Center for a rape examination. The medical staff found evidence of trauma to S.G.'s genitals. S.G.'s clothing and seminal evidence from the rape kit were placed in the police department's evidence locker. Later that night, Cooper was brought to the police station for questioning. He denied any involvement in the kidnapping and rape and denied knowing anyone named Gary. Despite this latter claim, Cooper later told Officer John Goss, who was searching computer databases, that he might check for "Gary Moon." Officer Goss ran plaintiff's name through law enforcement databases and learned that he had been to prison. On August 30, 2005, Gunter prepared and showed S.G. a photographic lineup of six white males matching the description of plaintiff. S.G. positively identified plaintiff as the man who had kidnapped and raped her.

On August 31, 2005, plaintiff called the police station after learning the officers had been looking for him. He voluntarily went to the station to discuss S.G.'s allegations. At approximately 11:30 a.m., Grasso advised plaintiff of his rights, obtained a waiver of those rights, and interviewed him. Plaintiff denied any involvement in the kidnapping and rape, but admitted he knew S.G. and that Cooper

had tried to set him up with her for a "date." Plaintiff indicated that the "date" did not occur because S.G. appeared to be afraid of him due to his prison background and she was too young for him. Plaintiff also admitted to knowing Kami. Plaintiff offered to provide a DNA sample and to take a polygraph test. After plaintiff's DNA was obtained, he was arrested on charges of kidnapping and rape. On November 17, 2005, the District Court of Pottawatomie County conducted a preliminary hearing. At the conclusion of the hearing, the court found probable cause and bound plaintiff over for trial.

On December 20, 2005, plaintiff's counsel requested DNA evidence from the District Attorney's Office for use in the criminal case. Prior to that date, the police department had transmitted the swabs from S.G.'s rape kit and her clothing to the Oklahoma State Bureau of Investigation ("OSBI") for DNA processing. Plaintiff's DNA swabs, however, were not transmitted to the OSBI until March 3, 2006. On February 21, 2006, plaintiff's counsel moved for production of DNA evidence and for dismissal of the charges or plaintiff's release from detention. The District Court heard the motion on February 24, 2006 and granted plaintiff's motion for release on February 27, 2006. The OSBI tested plaintiff's DNA upon receipt; that test indicated that plaintiff's DNA did not match any of the DNA recovered from plaintiff's clothing or rape kit. The OSBI generated a report of its findings on April 12, 2006. On May 18, 2006, the District Attorney's Office moved to dismiss the criminal case against

plaintiff and announced the dismissal on June 27, 2006. Plaintiff filed a notice of tort claim with the Clerk of the City of Shawnee on March 31, 2007.

As this is an action solely against the municipal entity, liability may not attach under § 1983 solely on the basis of *respondeat superior*. See Monell v. New York City Dep't. of Social Services, 436 U.S. 658, 694 (1978). A municipality, such as the City of Shawnee, is not liable under § 1983 unless there is an affirmative link between the alleged constitutional deprivation and the City's control, direction, or failure to supervise. See Meade v. Grubbs, 841 F.2d 1512, 1527 (1988). Moreover, to be liable, a municipality must have established or utilized an unconstitutional policy or custom. See id. at 1528. To meet his burden of proof, plaintiff must show not only that the City of Shawnee established such unconstitutional policies or customs, but also that these policies or customs caused the deprivation of his constitutional rights. See City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985). Plaintiff, however, has failed to articulate *any* policy or custom that was a moving force behind the alleged constitutional deprivations at issue here. This is fatal to his § 1983 claims against defendants.[3]

In addition, plaintiff cannot present a valid Fourth Amendment false arrest claim. A constitutional claim for false arrest requires a showing that the arrest was

---

[3] Defendants also seek summary judgment for claims arising under the Fifth Amendment and 42 U.S.C. §§ 1985 and 1986. While the Petition mentions sections 1985 and 1986 in passing, the court finds plaintiff has not alleged any claims under those statutes or based on the Fifth Amendment.

made without probable cause. Cottrell v. Kaysville City, 994 F.2d 730, 733 (10th Cir. 1993).  "Probable cause, in turn, is present if 'at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Id. at 733-34 (quoting Adams v. Williams, 407 U.S. 143, 148 (1972)). Here, the information known to the officers was sufficient for them to conclude that probable cause to arrest plaintiff existed.  Much of S.G.'s statement to police had been corroborated by plaintiff:  he confirmed knowing S.G., Cooper, and Kami; that Cooper had offered S.G. to him for sex; and that S.G. was afraid of him because of his prison record.  Furthermore, S.G. had unequivocally identified plaintiff as the perpetrator.

Likewise, defendants cannot be held liable for plaintiff's continuing detention after his arrest as the decision to detain plaintiff was made the District Court for Pottawatomie County.  On November 17, 2005, the Honorable Dawson R. Engle conducted a preliminary hearing in defendant's criminal case.  At the conclusion of that hearing, Judge Engle concluded that the evidence was sufficient to bind defendant over for trial.[4]  Exhibit 7 to Brief in Support of Defendants' Motion for Summary Judgment at 1.  As the Court of Appeals for the Tenth Circuit noted in a

---

[4]This finding would also defeat plaintiff's state law claim for false arrest. Christopher v. Circle K Convenience Stores, Inc., 937 P.2d 77, 79 (Okla.), cert. denied, 522 U.S. 1017 (1997).

similar context, "the preliminary hearing broke the 'chain of causation.'" <u>Taylor v. Meacham</u>, 82 F.3d 1556, 1564 (10th Cir.), *cert. denied*, 519 U.S. 871 (1996).

The court also finds plaintiff's § 1983 claim based on defendants' alleged failure to timely process the DNA evidence fails. In the Tenth Circuit, claims for failure to produce exculpatory evidence are analyzed under the Fourteenth Amendment's substantive due process rubric. <u>Becker v. Kroll</u>, 494 F.3d 904, 923-24 (10th Cir. 2007). Such a claim cannot be asserted, however, unless the aggrieved party proceeded to trial. <u>Id.</u> at 924. This is because a plaintiff cannot establish materiality, which is required to assert a *Brady*[5] violation, "unless the case goes to trial and the suppression of exculpatory evidence affects the outcome." <u>Becker</u>, 494 F.3d at 924. As plaintiff was not tried, he suffered no due process violation that is redressible under § 1983. Furthermore, to the extent plaintiff asserts a claim based on failure to train, it also fails. Plaintiff has presented no evidence that the City of Shawnee failed to train its officers, much less that the failure to train amounted "to deliberate indifference to the rights of persons with whom the police come into contact." <u>Myers</u>, 151 F.3d at 1318.

Defendants are also entitled to judgment in their favor on plaintiff's state law claims. First, under the Oklahoma Governmental Tort Claims Act, governmental employees are immune from suit for torts they commit while acting within the scope

---

[5]<u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963) (a defendant's right to exculpatory evidence is secured by the Due Process Clause).

of their employment. 51 O.S. § 152.1(A). As plaintiff has sued Grasso solely in his official capacity, the tort claims must be based on actions committed while Grasso was acting within the scope of his employment. *See* Pellegrino, 63 P.3d at 537. Moreover, Grasso should not have been named as a defendant on the state law claims. *See* 51 O.S. § 163(C) ("In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant"). Second, plaintiff's claims for false arrest and imprisonment and battery are barred because plaintiff did not provide notice within the time limits prescribed by the Governmental Tort Claims Act. The Act requires that notice of a tort claim be filed within one year of the date of loss. 51 O.S. § 156(B). Plaintiff filed his notice with the City Clerk on March 31, 2007. His tort claim for false arrest and imprisonment, however, accrued – at the latest – on the date he was released from custody, that is, February 27, 2006.[6] *See* Bellflower v. Blackshere, 281 P.3d 423, 425 (Okla. 1955). As notice of these claims were not presented within the one-year time frame, they are barred. Pellegrino, 63 P.3d at 537; 51 O.S. § 156(B).

Plaintiff's remaining state law claim for intentional infliction of emotional distress is based, in part, on the officers' "waiting approximately seven (7) months to process evidence that would free an innocent person." Petition at ¶ 41. As the OSBI did not generate its report exonerating plaintiff until April 12, 2006 and the

---

[6]Plaintiff's assault and battery claim, which is based on the officers' handcuffing him when they arrested him and transported him to jail, arose nearly six months earlier, on August 31, 2005.

criminal charges were not dismissed until May 18, 2006, notice of this claim was arguably made within the one-year period. The claim nonetheless fails because the City cannot be liable for torts that require proof that an employee acted without good faith. Plaintiff's claim for intentional infliction of emotional distress requires proof that the officers acted intentionally and willfully to cause him emotional distress. Such conduct precludes a finding that the officers' actions were taken in good faith. McMullen v. City of Del City, 920 P.2d 528, 531 (Okla. 1996). Plaintiff's intentional infliction of emotional distress claim therefore fails as a matter of law.

In sum, Defendants' Motion for Summary Judgment (Doc. No. 16) is GRANTED. Judgment will issue accordingly.

It is so ordered this 24th day of June, 2008.

*[signature: Tim Leonard]*
TIM LEONARD
United States District Judge